J1UVEVAP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                                    17 CR 684 (ER)

LAMONT EVANS,

          Defendant.                      PLEA

------------------------------x

                                  New York, N.Y.
                                  January 30, 2019
                                  4:33 p.m.

Before:

                HON. EDGARDO RAMOS,

                                  District Judge

                    APPEARANCES

GEOFFREY S. BERMAN,
    United States Attorney for the
    Southern District of New York
ELI J. MARK
ROBERT L. BOONE
NOAH SOLOWIEJCZYK
    Assistant United States Attorneys

WILLIAM R. MARTIN
ADEY O. ADENRELE
    Attorneys for Defendant

J1UVEVAP

1          (Case called)

2          MR. MARK:  Good afternoon, your Honor.

3          Eli Mark, Robert Boone, and Noah Solowiejczyk, for the

4    government.

5          THE COURT:  Good afternoon.

6          MR. MARTIN:  Good afternoon, your Honor.

7          William Martin, on behalf of Mr. Lamont Evans.

8          Your Honor, with me at counsel table is a young

9    lawyer, an associate at my firm; his name is Adey Adenrele.

10         Mr. Adenrele has not yet filed a *pro hac vice* motion;

11   he will do so prior to sentencing.

12         With your Honor's permission, may he sit at counsel's

13   table with me?

14         THE COURT:  He's absolutely welcome to stay.

15         MR. MARTIN:  Thank you.

16         And Mr. Evans is present, Judge.

17         THE COURT:  Good afternoon to you, all.

18         Mr. Martin, what are we doing?

19         MR. MARTIN:  Your Honor, Mr. Evans has reviewed the

20   indictment.  We negotiated and discussed this matter with the

21   assistants in the U.S. Attorney's Office.  And Mr. Evans today

22   would like to change his plea from that of not guilty to one of

23   guilty to Count One, conspiracy to commit bribery.

24         THE COURT:  Thank you.

25         Mr. Evans, your attorney has -- you may be seated,

J1UVEVAP

1    Mr. Martin.

2              MR. MARTIN:  Thank you, your Honor.

3              THE COURT:  Your attorney has advised me that you wish

4    to enter a plea of guilty.

5              I'm happy to take your plea.  However, before I do

6    that, I need to ask you a series of questions.

7              And essentially I'm trying to determine in the first

8    instance that you understand what is going on here today and

9    the consequences of taking a plea of guilty.  And I'm also

10   trying to determine whether you are, in fact, guilty to the

11   crime to which you wish to plead guilty.

12             And it's vitally important that you be absolutely

13   truthful to the questions that I ask you and, therefore, I'm

14   going to have you placed under oath.  Okay?

15             THE DEFENDANT:  Yes, sir.

16             (Defendant sworn)

17             THE COURT:  You may be seated.  And you can remain

18   seated throughout this proceeding.

19             Now, Mr. Evans, you are now under oath.  Do you

20   understand that if you answer any of my questions falsely, your

21   answers could be used against you in a prosecution for perjury

22   or for making a false statement?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  As I indicated, I'm going to ask you a

25   series of questions.  If I ask you a question and you don't

J1UVEVAP

1    understand it, just let me know that and I'll rephrase it.  Or

2    if I ask you a question and you wish to speak with your

3    attorneys before answering, just let me know that, I'll

4    accommodate you.  Okay?

5                THE DEFENDANT:  Yes, sir.

6                THE COURT:  We're going to start with some background

7    questions.

8                Sir, what is your full name?

9                THE DEFENDANT:  Lamont James Evans.

10               THE COURT:  How old are you, sir?

11               THE DEFENDANT:  Forty-one years old.

12               THE COURT:  How far did you get in school?

13               THE DEFENDANT:  Bachelors degree, undergrad at Kansas

14   State University.

15               THE COURT:  So you are able to read and write in

16   English?

17               THE DEFENDANT:  Yes, sir.

18               THE COURT:  Mr. Evans, are you now or have you

19   recently been under the care of a doctor or psychiatrist?

20               THE DEFENDANT:  No, sir.

21               THE COURT:  Have you ever been treated or hospitalized

22   for any mental illness or any type of addiction, including drug

23   or alcohol addiction?

24               THE DEFENDANT:  No, sir.

25               THE COURT:  In the past 24 hours, have you taken any

J1UVEVAP

1    drugs, medicine, or pills, or have you consumed any alcohol?

2                THE DEFENDANT:  No, sir.

3                THE COURT:  Is your mind clear today?

4                THE DEFENDANT:  Yes, sir.

5                THE COURT:  Mr. Evans, are you feeling well enough to

6    proceed and to understand what is going on here today?

7                THE DEFENDANT:  Yes, sir.

8                THE COURT:  Mr. Martin has informed me that you wish

9    to enter a plea of guilty; is that correct?

10               THE DEFENDANT:  Yes, sir.

11               THE COURT:  Mr. Evans, have you had a full opportunity

12   to discuss this case with your attorneys, including any

13   possible defenses that you might have?

14               THE DEFENDANT:  Yes, sir.

15               THE COURT:  Have you had a full opportunity to discuss

16   with your attorneys the consequences of entering a plea of

17   guilty?

18               THE DEFENDANT:  Yes, sir.

19               THE COURT:  Are you satisfied with your attorneys and

20   their representation of you?

21               THE DEFENDANT:  Yes, sir.

22               THE COURT:  Does either counsel have any doubt as to

23   Mr. Evans's competence to enter a guilty plea at this time?

24               MR. MARK:  No, your Honor.

25               MR. MARTIN:  No, your Honor.

J1UVEVAP

1            THE COURT:  Very well.

2            On the basis of Mr. Evans's responses to my questions

3    and my observations of his demeanor, I find that he is fully

4    competent to enter an informed guilty plea at this time.

5            The next series of questions that we need to go over,

6    Mr. Evans, involve the rights that you are giving up, including

7    the constitutional rights that you are giving up.  So please

8    listen very carefully.

9            First, you have a right to be represented by an

10   attorney at trial and at every other stage of the proceeding.

11   If you could not afford an attorney, an attorney would be

12   appointed to represent you without cost to you.

13           Do you understand that?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  You have a right to a speedy and public

16   trial by a jury on the charges against you which are contained

17   in the indictment.  Do you understand?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  At trial you would be presumed innocent,

20   and the government would be required to prove you guilty by

21   competent evidence beyond a reasonable doubt before you could

22   be found guilty.  You would not have to prove that you were

23   innocent at trial.  Do you understand?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  If there were a jury trial, the jury would

J1UVEVAP

1    be composed of 12 people selected from this district, and all

2    12 would have to agree unanimously that you were guilty before

3    you could be found guilty.  Do you understand?

4             THE DEFENDANT:  Yes, sir.

5             THE COURT:  At trial you would have a right to see and

6    hear all of the witnesses against you, and your attorney could

7    cross-examine them.  Your attorney could object to the

8    government's evidence and offer evidence on your behalf.  You

9    would also have the right to have subpoenas issued to compel

10   witnesses to come to court to testify in your defense.

11            Do you understand?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  At trial you would have the right to

14   testify if you wanted to, but no one could force you to

15   testify.  And if you chose not to testify, I would tell the

16   jury that it could not hold that against you.

17            Do you understand?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  If you were convicted at trial, you would

20   have the right to appeal that verdict.  Do you understand?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  Sir, do you also understand that by

23   entering a plea of guilty here today, you are giving up all of

24   the rights that I have just described, except for your right to

25   counsel, and you will be found guilty based solely on your plea

J1UVEVAP

1    of guilty?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you understand, Mr. Evans, that you can

4    change your mind right now for any reason and decide not to

5    enter a plea of guilty?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Now, the next series of questions involve

8    the charges and the possible punishment.

9              Sir, have you received a copy of the indictment?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Have you read the indictment?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Did you discuss the indictment with your

14   attorneys?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Sir, do you understand that you are

17   charged in Count One of that indictment with conspiracy to

18   commit bribery by agreeing to receive bribe payments in

19   exchange for directing University of South Carolina and

20   Oklahoma State University basketball players to retain certain

21   financial advisers and business managers, in violation of Title

22   18 of the United States Code, Section 371?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:   Mr. Mark, what are the elements of that

25   offense?

J1UVEVAP

1          MR. MARK:  Your Honor, in order for the government to

2     prove this charge, there are four elements to the offense:

3          First, that two or more persons entered into an

4     unlawful agreement to commit federal funds bribery, in

5     violation of Title 18, United States Code, Section

6     666(a)(1)(B).

7          Second, that the defendant knowingly and willfully

8     became a member of the conspiracy.

9          Third, that one of the members of the conspiracy

10    knowingly committed at least one of the overt acts charged in

11    the indictment.

12          And fourth, that the overt act was committed to

13    further some objective of the conspiracy.

14          Further, in order to prove defendant guilty of federal

15    funds bribery, the government must prove five elements beyond a

16    reasonable doubt:

17          First, that at the time alleged in the indictment, the

18    defendant was an agent of an organization.

19          Second, that in a one-year period the organization

20    received federal benefits in excess of $10,000.

21          Third, that the defendant accepted or agreed to accept

22    or solicited or demanded something of value from another

23    person.

24          Fourth, that the defendant acted corruptly with the

25    intent to be influenced or rewarded with respect to a

J1UVEVAP

1    transaction of the organization.

2            And fifth, that the value of the transaction to which

3    the payment related was at least $5,000.

4            THE COURT:  Thank you.

5            Mr. Evans, did you hear what the prosecutor said?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Sir, do you understand that if you did not

8    plead guilty to Count One, the government would be required to

9    prove each and every element of that charge beyond a reasonable

10   doubt at trial?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Mr. Evans, have you discussed with your

13   attorneys the potential punishment that you face if you were to

14   plead guilty to that charge?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Do you understand that Count One carries a

17   maximum term of imprisonment of five years?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  It also carries a maximum term of

20   supervised release of three years.

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  And that there are potential financial

23   penalties, including $100 mandatory special assessment, that I

24   must impose, and a fine that I could impose that could be as

25   high as $250,000 or twice the gross gained from the offense or

J1UVEVAP

1    twice the gross loss to any victims of the offense.

2              Do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Now, I mentioned the term "supervised

5    release."  Do you understand that "supervised release" means

6    that you will be subject to monitoring and supervision when you

7    are released from prison, if I sentence you to a prison term?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  And that there are terms and conditions of

10   supervised release with which you must comply.  And if you do

11   not comply with them, you could be returned to prison without a

12   jury trial.  Do you understand?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Do you understand that if you violated the

15   terms or conditions of supervised release and are returned to

16   prison, that new prison term could be for part or all of the

17   term of supervised release, and that you will not receive

18   credit for time previously served on your sentence or time

19   previously served on supervised release.

20             Do you understand that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Sir, do you understand that as part of

23   your sentence, I can also order restitution to any person

24   injured as a result of your conduct?

25             THE DEFENDANT:  Yes, sir.

J1UVEVAP

1        THE COURT:  Mr. Evans, do you further understand that

2   if I accept your guilty plea and find you guilty, that

3   determination may deprive you of certain valuable civil rights,

4   such as the right to vote, the right to hold public office, the

5   right to serve on a jury, the right to possess any kind of

6   firearm, and the right to hold certain professional licenses?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Mr. Evans, are you a United States

9   citizen?

10       THE DEFENDANT:  No, sir.

11       THE COURT:  What country are you a citizen of?

12       THE DEFENDANT:  The Bahamas.

13       THE COURT:  Mr. Martin, have you advised Mr. Evans of

14   the possible immigration consequences of entering a plea of

15   guilty to Count One of the indictment?

16       MR. MARTIN:  Your Honor, we have so advised Mr. Evans

17   of those consequences.  And we have also put Mr. Evans in touch

18   with an immigration lawyer so that the immigration lawyer can

19   go over those consequences and possible defenses that he may

20   have.

21       The answer is yes, we've spent considerable time with

22   Mr. Evans on immigration issues, including immigration counsel.

23       THE COURT:  Thank you, Mr. Martin.

24       I do need to inquire a little bit more, however.

25       Mr. Evans, has your attorney advised you as to the

J1UVEVAP

1    possible immigration consequences of your plea?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And do you understand that there could be

4    adverse immigration consequences, including possible

5    deportation, as a result of your plea?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Do you understand that if there are

8    adverse immigration consequences as a result of your plea, you

9    will not be able to withdraw your plea or appeal or otherwise

10   challenge your conviction on the basis of those adverse

11   consequences?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you understand that there is a

14   possibility that you will be deported from the United States

15   after you serve your sentence on this case?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And do you understand that if for some

18   reason you are not deported after serving a sentence, you will

19   be subject to -- you will still be subject to supervised

20   release?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  And do you understand that even if you are

23   deported, returning to the United States during your period of

24   supervised release without the permission of the U.S. -- of the

25   Secretary of the U.S. Department of Homeland Security would not

J1UVEVAP

1    only be a separate crime, but also a violation of the

2    conditions of your supervised release?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you understand that if you have begun

5    the process of becoming a naturalized U.S. citizen, the fact of

6    your conviction could adversely affect that process?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Do you also understand the fact of your

9    conviction could adversely affect any application you may make

10   in the future to reenter the United States?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Now, the next series of questions for me

13   to discuss involve the sentencing guidelines.

14             So let me begin by asking you, Mr. Evans, do you

15   understand that there are sentencing guidelines that I must

16   consider in determining the appropriate sentence in your case?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  And have you spoken with your attorneys

19   about how the guidelines apply to your case?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Mr. Evans, do you understand that I have

22   to calculate a guideline range, and then consider that range in

23   determining what your sentence will be?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And do you also understand that I will not

J1UVEVAP

1    be able to make that calculation until after a presentence

2    report has been prepared by the probation office, and both you

3    and your attorneys, and the government have had a chance to

4    review a draft of that report?

5                THE DEFENDANT:  Yes, sir.

6                THE COURT:  Do you further understand that even after

7    I make the guidelines calculation, I have the ability to impose

8    a sentence that can be higher or lower than what the guidelines

9    recommend?

10               THE DEFENDANT:  Yes, sir.

11               THE COURT:  Do you also understand that in addition to

12   the guideline range, I also have to consider a number of other

13   factors which are set forth in the law known as Title 18 of the

14   United States Code, Section 3553(a), which require me to

15   consider, among others, factors concerning your personal

16   history and characteristics, and the nature of the offense in

17   determining the appropriate sentence in your case?

18               Do you understand that?

19               THE DEFENDANT:  Yes, sir.

20               THE COURT:  So even after I calculate the guideline

21   range, I must also consider these other factors.  And again, I

22   might settle on a sentence higher or lower than what the

23   guidelines recommend.  Do you understand that?

24               THE DEFENDANT:  Yes, sir.

25               THE COURT:  Mr. Evans, do you understand that if your

J1UVEVAP

1    attorneys or anyone else has attempted to estimate or predict

2    what your sentence will be, their estimate or prediction could

3    be wrong?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Mr. Evans, while it is perfectly

6    appropriate for you and your attorneys to have discussed how

7    the sentence will be calculated, no one can give you any

8    assurance of what your sentence will be.

9              Do you understand that?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  Mr. Evans, I say all of this to you

12    because you need to understand that today, that if your

13    sentence is different from what your attorney or anyone else

14    told you it might be, or if it is different from what you

15    expect, or even if it is different from what is contained in

16    your agreement with the government, you will still be bound by

17    your plea and you will not be allowed to withdraw your guilty

18    plea.  Do you understand that?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  And Mr. Evans, do you understand that if

21    you are sentenced to prison, there is no parole in the federal

22    system and you will not be released early on parole?

23              THE DEFENDANT:  Yes, sir.

24              THE COURT:  Now, the next series of questions involve

25    your agreement with the government.

J1UVEVAP

1           I have been given a letter; it is six pages long and

2    it has a series of signatures on page 6 dated January 24, 2019.

3    One of the signatures purports to be yours.  I'm going to hold

4    that up.  Do you see that from where you are seated?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  And sir, is that your signature on this

7    page?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  I will mark this Court Exhibit 1.

10          Now, Mr. Evans, did you read the agreement before you

11   signed it?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Did you discuss it with your attorneys

14   before you signed it?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Did you fully understand the agreement

17   when you signed it?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Mr. Evans, does this agreement include

20   your understanding of the entire agreement between you and the

21   government?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Mr. Evans, is there any other agreement or

24   is there any other promise about your plea or your sentence

25   that is not contained in this agreement?

J1UVEVAP

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Did anyone threaten you or force you to

3    enter into the agreement?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Other than what is in the agreement, has

6    anyone promised you anything or offered you anything to plead

7    guilty?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Has anyone made a promise to you as to

10   what your sentence will be?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  Now, sir, there is a stipulation in the

13   agreement concerning the sentencing guidelines.  Do you

14   understand that that stipulation binds you and it binds the

15   government, but it does not bind me?  I'm still going to make

16   my own determination as to what the appropriate guidelines

17   range is.

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you also understand that under certain

20   circumstances, you have the right to appeal any sentence that I

21   might impose.  However, because there is a provision in the

22   agreement that says that if I sentence you within or below the

23   stipulated guidelines range, you essentially are giving up your

24   right to appeal the sentence that I impose.

25         Do you understand that?

J1UVEVAP

1                THE DEFENDANT:  Yes, sir.

2                THE COURT:  Mr. Mark, will you please summarize what

3       the government would expect to prove if this case were to go to

4       trial.

5                MR. MARK:  In the event this case were to proceed to

6       trial, the government would prove beyond a reasonable doubt

7       that the defendant committed Count One.  The government would

8       do so by, among other things, documentary evidence, financial

9       records, recorded calls and meetings, and witness testimony.

10               This would include the defendant's employment

11      contracts with the colleges, the University of South Carolina

12      and Oklahoma State University.  Those contracts were for him to

13      serve as an assistant basketball coach, and they discuss roles

14      and responsibilities as a basketball coach; and that the

15      defendant was prohibited to accept money to steer basketball

16      players to financial advisers and business managers.  And there

17      would be testimony from representatives of those schools who

18      would discuss the same.

19               There would be recorded phone calls which were

20      recorded pursuant to judicially authorized wiretaps where the

21      defendant and others discussed the bribes, including money that

22      the defendant wanted for himself and money that he wanted to

23      recruit athletes, where they discussed the players that the

24      defendant was going to steer to the athlete advisers in

25      exchange for the bribes that he received.

J1UVEVAP

1      There would be recorded meetings where he discussed

2   the influence he had with players and their families; and how

3   if any player doubted whether he was receiving financial

4   incentives to steer a player, he would deny it.  And then he

5   would also bury other athlete advisers interested in these

6   players.

7      There would be an audio and video-recorded meeting in

8   a hotel in West Virginia during which the defendant introduced

9   a player on one of his college basketball teams to one of the

10  briber athlete advisers and during which he touted the briber's

11  services.

12      There would also be financial records, including a

13  wire transfer of one of the bribes; and witnesses testimony,

14  including from cooperating witnesses who participated in a

15  scheme and paid bribes to the defendant.

16      Based on all of that evidence and more, the government

17  would anticipate that it would prove beyond a reasonable doubt

18  the defendant's guilt of the offense.

19      THE COURT:  What is the government's proffer

20  concerning venue?

21      MR. MARK:  Among other calls and meetings, there was a

22  particular meeting in April 2016 that the defendant

23  participated in in a hotel room here in New York where the

24  defendant discussed with others in the scheme that he was

25  going -- about the scheme and how he was going to influence the

J1UVEVAP

players to the bribers.  And during that meeting, he received

cash, a cash bribe.

THE COURT:  Thank you.

Mr. Evans, did you hear what the prosecutor said?

THE DEFENDANT:  Yes, sir.

THE COURT:  And sir, have you clearly understood

everything that has happened here today so far?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Evans, would you please tell me in

your own words what it was that you did that makes you guilty

of the crime to which you are pleading guilty?

THE DEFENDANT:  Your Honor, sometime in late 2016 and

'17, continuing, I agreed to -- with other codefendants in this

case to accept cash payments in exchange for introducing them

to certain college basketball players or accepted -- expected

to be professional athletes.  I accepted funds totaling

approximately $22,000.

In exchange for those funds, I offered to influence

certain student athletes that I coach, both at South Carolina

and Oklahoma State University, to Defendant Dawkins and Munesh

Sood, business adviser in investment management services, once

those student athletes entered the National Basketball

Association.

I now know that accepting those funds in exchange for

introducing any one player to those defendants was wrong and

J1UVEVAP

1    violated the law.

2              THE COURT:  Sir, did anyone threaten you or force you

3    to do those things?

4              THE DEFENDANT:  No, sir.

5              THE COURT:  Does either counsel wish me to make any

6    further inquiries?

7              MR. MARK:  The government would just proffer a couple

8    of additional facts that are relevant here.

9              THE COURT:  Very well.

10             MR. MARK:  One is that the schools the defendant

11   coached at each received federal funds in excess of $10,000 per

12   year.

13             Second, that in connection with influencing these

14   players to these athlete advisers, who he expected they would

15   sign with, that those signings of a potential NBA player is

16   valued in excess of $5,000.

17             And lastly, that this conspiracy, which he said began

18   in 2016, continued through 2017.

19             THE COURT:  Thank you.

20             Mr. Martin, do you wish me to make any further

21   inquiry?

22             MR. MARTIN:  No, your Honor.

23             THE COURT:  Mr. Martin, do you believe that there is

24   an adequate factual basis to support a plea of guilty?

25             MR. MARTIN:  I do, your Honor.

J1UVEVAP

1          THE COURT:  Mr. Mark, do you believe there is an

2     adequate factual basis to support a plea of guilty?

3          MR. MARK:  Yes, your Honor.

4          THE COURT:  You may be seated.

5          Mr. Evans, how do you now plead to the charge in Count

6     One of the indictment, guilty or not guilty?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  Sir, are you, in fact, guilty of that

9     charge?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Are you pleading guilty voluntarily and of

12     your own free will?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Very well.

15          Because you acknowledge that you are, in fact, guilty

16     as charged in Count One of the indictment, because I find that

17     you know your rights and are waiving them knowingly and

18     voluntarily, with an understanding of the consequences of your

19     plea, including the potential sentences that may be imposed, I

20     accept your guilty plea and find you guilty on Count One.

21          For the record, I note that I have also been provided

22     with a consent preliminary order of forfeiture/money judgment

23     also signed by the parties, by Mr. Mark on January 28, and by

24     Mr. Martin and Evans on January 24.

25          I will go ahead and so-order this document as well.

J1UVEVAP

1        Mr. Evans, I will now direct that a presentence

2   investigation be conducted by the probation department and that

3   a report be prepared.  You will be interviewed as part of that

4   presentence investigation process.  You can and should have

5   your lawyer with you during that interview.  It is also

6   possible that you will be visited at your home and certain

7   members of your family may be interviewed as well.

8        The presentence report is a very important part of my

9   decision as to what your sentence will be.  So it is vital that

10  when you receive a copy of the draft of the report, you review

11  it very carefully with your attorney and bring any

12  discrepancies to my attention.  Both you and your lawyer will

13  also have the right to speak on your behalf before the

14  imposition of sentence.

15       Do we have a date for sentence?

16       THE DEPUTY CLERK:  Yes.  May 10 at 11 a.m.

17       THE COURT:  Does counsel have that information?

18       MR. MARK:  Yes.

19       I just wanted to -- going back to the defendant's

20  allocution, I just wanted to go over and see if your Honor

21  could just confirm one fact:  In particular, that the defendant

22  knew at the time that he was doing these acts, when he was

23  engaged in the scheme, that he knew what he was doing was

24  wrong.

25       THE COURT:  I do believe that he said that before I

J1UVEVAP

1    asked him, but I will go ahead.

2           Mr. Evans, at the time that you were engaged in those

3    acts, the ones that you read, that you know that what you were

4    doing was wrong and against the law?

5           THE DEFENDANT:  That it was wrong, yes.

6           THE COURT:  And against the law.

7           THE DEFENDANT:  No, I didn't know it was against the

8    law, sir.

9           THE COURT:  Okay.

10          Mr. Mark?

11          MR. MARK:  Could we just have a second?

12          THE COURT:  Sure.

13          (Counsel conferred)

14          MR. MARTIN:  Excuse me, your Honor.

15          (Counsel conferred with defendant)

16          MR. MARTIN:  If I could.  He stated earlier on the

17   record that he knew that what he was doing was wrong and

18   violated the law.

19          THE COURT:  That's what I recall him reading.

20          MR. MARTIN:  May I have a moment, Judge?

21          THE COURT:  Absolutely.

22          (Counsel conferred)

23          MR. MARK:  Your Honor, we appreciate the Court's

24   indulgence for the brief break.

25          We just wanted to confirm on the record that it is not

J1UVEVAP

1   an element of the offense that the defendant -- his allocution

2   to him knowing specifically that this conduct was illegal.  His

3   acknowledgment that it was wrong is sufficient, and we

4   understand that that is an agreement -- that that position is

5   agreed to by defense counsel.

6              THE COURT:  Very well.

7              That adjourns this proceeding.

8              I do have a question for the government.

9              As I understand it, two defendants remain in this

10  indictment; is that correct?

11             MR. MARK:  Yes, your Honor.

12             THE COURT:  Therefore, is there a revised estimate of

13  how long the trial will take if this case were to go to trial

14  with the remaining defendants?

15             MR. MARK:  Your Honor, obviously I think that it will

16  be a quicker trial, without the three defendants who've pled.

17  We anticipate this is going to be a two-to-three-week trial,

18  and the government is obviously ready to proceed on April 22nd.

19             THE COURT:  Very well.  Thank you.

20             Unless there's anything else, gentlemen?

21             MR. MARTIN:  May we contact your clerk to get a date

22  to report back to probation, your Honor, after you adjourn?

23             We need to contact the clerk.

24             THE COURT:  Okay.

25             MR. MARTIN:  Thank you.

J1UVEVAP

1            THE COURT:  Very well.

2            We're adjourned.

3                              *    *    *